## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

————————————————————————— )
PAETEC COMMUNICATIONS, INC.,   )
et al.,       )
      )
     Plaintiffs,   )  Civil Action No. 08-076 (EGS)
      )
    vs.   )
      )
AT&T CORP.,     )
      )
    Defendant.   )
————————————————————————— )

### ANSWER OF DEFENDANT AT&T CORP.

Defendant AT&T Corp. ("AT&T") hereby provides its Answer to the Complaint filed by

Plaintiffs Paetec Communications, Inc., *et al.*, ("Plaintiffs").

### NATURE OF THE ACTION

**1.**    **This case involves AT&T's failure to pay legally required charges for its use of PAETEC's local network facilities to complete long distance calls. Whenever one of AT&T's customers makes a long-distance call to one of PAETEC's local telephone customers, AT&T uses PAETEC's facilities to complete, or "terminate", the AT&T long-distance call to the called party. Pursuant to PAETEC's federal and state tariffs on file with the Federal Communications Commission ("FCC") and the applicable state regulatory commissions, AT&T is required to pay PAETEC the filed rate for "terminating" access to PAETEC's local exchange facilities. AT&T has failed to pay PAETEC the filed rates in the tariffs.**

RESPONSE TO PARAGRAPH 1: AT&T admits that Plaintiffs have alleged that AT&T

has failed to pay certain charges billed by Plaintiffs. AT&T further admits that, on certain calls

placed by an AT&T customer, the calls are routed in such a manner that they are completed over

facilities owned or leased by Plaintiffs. AT&T denies the remaining allegations in Paragraph 1

of the Complaint.

## PARTIES

2.     Plaintiff PAETEC Communications, Inc. ("PAETEC") is a corporation organized under the laws of the state of Delaware with its principal place of business located at One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York and is engaged in the business of providing telecommunications services in, among other places, the District of Columbia.

RESPONSE TO PARAGRAPH 2:  AT&T lacks knowledge and information sufficient to

form a belief as to the allegations of Paragraph 2 of the Complaint, and those allegations are

therefore denied.

3.     Plaintiff PAETEC Communications of Virginia, Inc. ("PAETEC") is a corporation organized under the laws of the Commonwealth of Virginia with its principal place of business located at One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York and is engaged in the business of providing telecommunications services in the Commonwealth of Virginia.

RESPONSE TO PARAGRAPH 3:  AT&T lacks knowledge and information sufficient to

form a belief as to the allegations of Paragraph 3 of the Complaint, and those allegations are

therefore denied.

4.     Plaintiff US LEC Communications Inc. d/b/a PAETEC Business Services ("PAETEC") is a corporation organized under the laws of the state of North Carolina with its principal place of business located at One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York and is engaged in the business of providing telecommunications services in, among other places, the states of New York and Indiana.

RESPONSE TO PARAGRAPH 4:  AT&T lacks knowledge and information sufficient to

form a belief as to the allegations of Paragraph 4 of the Complaint, and those allegations are

therefore denied.

5.     Plaintiff US LEC of Pennsylvania Inc. d/b/a PAETEC Business Services ("PAETEC") is a corporation organized under the laws of the state of North Carolina with its principal place of business located at One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York and is engaged in the business of providing telecommunications services in the states of New Jersey, Delaware, and Pennsylvania.

RESPONSE TO PARAGRAPH 5:  AT&T lacks knowledge and information sufficient to form a belief as to the allegations of Paragraph 5 of the Complaint, and those allegations are therefore denied.

**6.     Plaintiff US LEC of Virginia LLC d/b/a PAETEC Business Services ("PAETEC") is a limited liability company organized under the laws of Delaware with its principal place of business located at One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York and is engaged in the business of providing telecommunications services in the District of Columbia and Virginia.**

RESPONSE TO PARAGRAPH 6:  AT&T lacks knowledge and information sufficient to form a belief as to the allegations of Paragraph 6 of the Complaint, and those allegations are therefore denied.

**7.     Plaintiff US LEC of Maryland LLC d/b/a PAETEC Business Services ("PAETEC") is a limited liability company organized under the laws of the North Carolina with its principal place of business located at One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York and is engaged in the business of providing telecommunications services in Maryland.**

RESPONSE TO PARAGRAPH 7:  AT&T lacks knowledge and information sufficient to form a belief as to the allegations of Paragraph 7 of the Complaint, and those allegations are therefore denied.

**8.     Plaintiff US LEC of Alabama LLC d/b/a PAETEC Business Services ("PAETEC") is a limited liability company organized under the laws of the sate of North Carolina with its principal place of business located at One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York and is engaged in the business of providing telecommunications services in Alabama.**

RESPONSE TO PARAGRAPH 8  AT&T lacks knowledge and information sufficient to form a belief as to the allegations of Paragraph 8 of the Complaint, and those allegations are therefore denied.

**9.     Plaintiff US LEC of Florida LLC d/b/a PAETEC Business Services ("PAETEC") is a limited liability company organized under the laws of the state of North Carolina with its principal place of business located at One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York and is engaged in the business of providing telecommunications services in Florida.**

RESPONSE TO PARAGRAPH 9:  AT&T lacks knowledge and information sufficient to form a belief as to the allegations of Paragraph 9 of the Complaint, and those allegations are therefore denied.

**10.    Plaintiff US LEC of Georgia LLC d/b/a PAETEC Business Services ("PAETEC") is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at on One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York and is engaged in the business of providing telecommunications services in Georgia.**

RESPONSE TO PARAGRAPH 10:  AT&T lacks knowledge and information sufficient to form a belief as to the allegations of Paragraph 10 of the Complaint, and those allegations are therefore denied.

**11.    Plaintiff US LEC of North Carolina Inc. d/b/a PAETEC Business Services ("PAETEC") is a corporation organized under the laws of the state of Delaware with its principal place of business located at on One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York and is engaged in the business of providing telecommunications services in North Carolina.**

RESPONSE TO PARAGRAPH 11:  AT&T lacks knowledge and information sufficient to form a belief as to the allegations of Paragraph 11 of the Complaint, and those allegations are therefore denied.

**12.    Plaintiff US LEC of South Carolina Inc. d/b/a PAETEC Business Services ("PAETEC") is a corporation organized under the laws of the state of Delaware with its principal place of business located at on One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York and is engaged in the business of providing telecommunications services in South Carolina.**

RESPONSE TO PARAGRAPH 12:  AT&T lacks knowledge and information sufficient to form a belief as to the allegations of Paragraph 12 of the Complaint, and those allegations are therefore denied.

**13.    Plaintiff US LEC of Tennessee Inc. d/b/a PAETEC Business Services ("PAETEC") is a corporation organized under the laws of the state of Delaware with its principal place of business located at on One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York and is engaged in the business of providing telecommunications services in Tennessee, Mississippi, and Louisiana.**

RESPONSE TO PARAGRAPH 13:  AT&T lacks knowledge and information sufficient to form a belief as to the allegations of Paragraph 13 of the Complaint, and those allegations are therefore denied.

**14.     All of the PAETEC entities are indirect wholly-owned subsidiaries of PAETEC Holding Corp., a publicly held corporation organized under the laws of the state of Delaware with its principal place of business located at One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York.  Prior to a corporate merger that closed on February 28, 2007, the entities described in paragraphs 4 and 13 were owned by a publicly held Delaware corporation, US LEC Corp., that was unaffiliated with PAETEC.**

RESPONSE TO PARAGRAPH 14:  AT&T lacks knowledge and information sufficient to form a belief as to the allegations of Paragraph 14 of the Complaint, and those allegations are therefore denied.

**15.     Defendant AT&T Corp. is a corporation organized under the laws of the state of New York and has its principal place of business in Bedminster, New Jersey. AT&T Corp. is engaged in the business of providing interstate and intrastate telecommunications and telecommunications related services in the District of Columbia and other states.**

RESPONSE TO PARAGRAPH 15:  AT&T admits the allegations in paragraph 15 of the Complaint.

## JURISDICTION AND VENUE

**16.     This court has subject matter jurisdiction herein pursuant to 28 U.S.C. §§ 1331 and 1337 because this case arises out of federal law, the Communications Act of 1934, as amended, 47 U.S.C. § 151 *et seq.*, and federal tariffs filed with the Federal Communications Commission.**

RESPONSE TO PARAGRAPH 16:  AT&T denies the allegations of paragraph 16 of the Complaint, except admits that the Court has subject matter jurisdiction over this action.

**17.     This court has supplement jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367.**

RESPONSE TO PARAGRAPH 17:  AT&T denies the allegations of paragraph 17 of the Complaint.

18.    This court has personal jurisdiction over AT&T because AT&T is engaged in the systematic and continuous conduct of business in the District of Columbia.  AT&T provides telecommunications and telecommunications related services in the District of Columbia.  AT&T's conduct in connection with the District of Columbia required it reasonably to anticipate that it would be subject to the jurisdiction of the courts in the District of Columbia.

RESPONSE TO PARAGRAPH 18:  AT&T admits that it is subject to personal jurisdiction in the District of Columbia, and otherwise denies the allegations in Paragraph 18 of the Complaint.

19.    Venue is proper in the judicial district pursuant to 28 U.S.C. §1391 in that the Defendant AT&T is found in and transacts business in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred within this district.

RESPONSE TO PARAGRAPH 19:  AT&T admits that it is subject to venue in this District, but it reserves its rights to seek a transfer of venue pursuant 28 U.S.C. § 1404 or otherwise to contend that the case should not be heard in this District.  AT&T denies the remaining allegations in Paragraph 19 of the Complaint.

## FACTS COMMON TO ALL CLAIMS

20.    PAETEC is engaged in the business of providing telecommunications services and telecommunications related services.  These services include, but are not limited to, interstate and intrastate exchange access.

RESPONSE TO PARAGRAPH 20:  AT&T lacks knowledge and information sufficient to form a belief as to the allegations of Paragraph 20 of the Complaint, and those allegations are therefore denied.

21.    At all times relevant to this action, AT&T has engaged in providing telecommunications services and telecommunications related services for which AT&T has utilized PAETEC's interstate and intrastate exchange access services.

RESPONSE TO PARAGRAPH 21:  AT&T admits that it is engaged in, among other things, the business of providing telecommunications services and telecommunications related services.  AT&T further admits that, on certain calls placed by an AT&T customer, the calls are

routed in such a manner that they are in part sent over facilities owned or leased by Plaintiffs.

AT&T denies the remaining allegations of Paragraph 21 of the Complaint.

**22.     From on or about April 1, 2007 to the present, PAETEC provided and continues to provide to AT&T various telecommunications services including, but not limited to, interstate and intrastate access services pursuant to applicable federal and state tariffs.**

RESPONSE TO PARAGRAPH 22:  AT&T admits that, since April 1, 2007, Plaintiffs

have provided AT&T with certain telecommunications services.  AT&T denies the remaining

allegations of Paragraph 22 of the Complaint.

**23.     PAETEC invoiced and continues to invoice AT&T monthly for such services purchased by AT&T.**

RESPONSE TO PARAGRAPH 23:  AT&T admits that it has received certain invoices

from Plaintiffs.  AT&T denies the remaining allegations of Paragraph 23 of the Complaint.

**24.     PAETEC's charges for the services have been and continue to be in compliance with all applicable tariffs.**

RESPONSE TO PARAGRAPH 24:  AT&T denies the allegations of Paragraph 24 of the

Complaint.

**25.     Despite receiving notice of their delinquency, AT&T failed to pay the amounts owing.  These amounts owed to PAETEC exceed five hundred thousand dollars ($500,000).  In addition, AT&T owes PAETEC late payment fees calculated at 1.5% per month per the applicable tariffs.**

RESPONSE TO PARAGRAPH 25:   AT&T admits that it has received notices from

Plaintiffs regarding past due bills.  AT&T further admits that it has not paid the full amounts of

certain bills it received from Plaintiffs.  AT&T denies the remaining allegations in Paragraph 25

of the Complaint.

**26.     Pursuant to the terms of the applicable tariffs, AT&T is responsible for any fees or expenses, including attorney's fees, in collecting or attempting to collect, any charges owed in accordance with the tariffs.**

RESPONSE TO PARAGRAPH 26: AT&T asserts that Paragraph 26 of the Complaint contains a legal conclusion which need not be answered. AT&T denies the remaining allegations of Paragraph 26 of the Complaint.

**27.  Prior to April 2007, the PAETEC entities described in paragraphs 2 and 3 herein, provided exchange access services to AT&T pursuant to a Settlement and Switched Access Agreement ("Terminated Agreement One") which became effective on April 1, 2000.**

RESPONSE TO PARAGRAPH 27: AT&T admits that AT&T and certain Plaintiffs executed an agreement relating to switched access services. AT&T respectfully refers the Court to the agreement referenced in Paragraph 27 of the Complaint for its complete contents. AT&T denies the remaining allegations of Paragraph 27 of the Complaint.

**28.  Section <u>B.1. Contract Period</u>, of Terminated Agreement One states:**

**This Agreement will go into effect on the Effective Date and *will continue* in effect *until terminated* in accordance with this Agreement. *Either party may terminate* this Agreement: *(a) at any time after the date that is five (5) years following the Effective Date upon sixty (60) days' written notice to the other party*; or (b) if the other party fails to cure a material breach within sixty (60) days after written notice of thereof.**

RESPONSE TO PARAGRAPH 28: AT&T admits that the agreement between AT&T and certain Plaintiffs contained a provision entitled "B.1 Contract Period." AT&T respectfully refers the Court to the agreement referenced in Paragraph 28 of the Complaint for its complete contents. AT&T denies the remaining allegations of Paragraph 28 of the Complaint.

**29.  Page 1 of Terminated Agreement One states "Effective Date:  As of April 1, 2000."**

RESPONSE TO PARAGRAPH 29: AT&T admits that the agreement between AT&T and certain Plaintiffs contained a provision relating to the effective date. AT&T respectfully refers the Court to the agreement referenced in Paragraph 29 of the Complaint for its complete contents. AT&T denies the remaining allegations of Paragraph 29 of the Complaint.

30.     By letter dated January 5, 2007, PAETEC gave written notice of its intent to terminate Terminated Agreement One and stated in pertinent part:

> In accordance with Section B.1 of the Agreement, *this letter is formal notice that PAETEC intends to terminate* the *Agreement* in its entirety, including all subsequent and related letters of understanding or agreement, *effective March 31, 2007.* The rates, terms and conditions of *PAETEC's interstate and intrastate exchange access tariffs will apply to* services provided *ATT hereafter.*

RESPONSE TO PARAGRAPH 30: AT&T admits that Plaintiffs provided AT&T with certain letters. AT&T denies the remaining allegations of Paragraph 30 of the Complaint.

31.     On or after March 31, 2007, PAETEC, through the entities described in paragraphs 2 and 3 of this Complaint, provided and continues to provide exchange access services to AT&T. AT&T has failed to pay and continues to fail to pay PAETEC for these services pursuant to the rates filed in PAETEC'S interstate and intrastate exchange access tariffs.

RESPONSE TO PARAGRAPH 31: AT&T admits that it has not paid the full amounts of certain bills it received from Plaintiffs. AT&T denies the remaining allegations in Paragraph 31 of the Complaint.

32.     Prior to July 2007, the PAETEC entities described in paragraphs 4 through 13 of this Complaint provided exchange access services to AT&T pursuant to a Switched Access Agreement ("Terminated Agreement Two") which became effective on March 14, 2002.

RESPONSE TO PARAGRAPH 32: AT&T admits that AT&T and certain Plaintiffs executed an agreement relating to switched access services. AT&T respectfully refers the Court to the agreement referenced in Paragraph 32 of the Complaint for its complete contents. AT&T denies the remaining allegations of Paragraph 32 of the Complaint.

33.     Section 1. Contract Period, of Terminated Agreement Two states:

> This *Agreement* with respect to Switched Access Services after the Effective Date will go into effect on the Effective Date and *will continue* in effect *until terminated* in accordance with this Agreement. *Either party may terminate* this Agreement: *(a) at any time after the date that is four (4) years following the Effective Date upon sixty (60) days' written notice to the other party*; or (b)

**if the other party fails to cure a material breach within sixty (60) days after written notice thereof.**

RESPONSE TO PARAGRAPH 33:  AT&T admits that the agreement between AT&T and certain Plaintiffs contained a provision entitled "B.1 Contract Period."  AT&T respectfully refers the Court to the agreement referenced in Paragraph 33 of the Complaint for its complete contents.  AT&T denies the remaining allegations of Paragraph 33 of the Complaint.

**34.    Page 1 of Terminated Agreement Two states "Effective Date:  March 14, 2002."**

RESPONSE TO PARAGRAPH 34:  AT&T admits that the agreement between AT&T and certain Plaintiffs contained a provision relating to the effective date.  AT&T respectfully refers the Court to the agreement referenced in Paragraph 34 of the Complaint for its complete contents.  AT&T denies the remaining allegations of Paragraph 34 of the Complaint.

**35.    By letter dated April 30, 2007, PAETEC gave written notice of its intent to terminate Terminated Agreement Two and stated in pertinent part:**

**In accordance with Section 1 and 15 of the Agreement, *this letter is formal notice* that US LEC [PAETEC] intends to terminate the *Agreement* in this entirety *effective June 30, 2007.*  After that date, the rates, terms and conditions of *PAETEC Communications, Inc.'s interstate exchange access tariff and the relevant US LEC operating company intrastate exchange access tariffs will apply to* services provided to *ATT.***

RESPONSE TO PARAGRAPH 35:  AT&T admits that Plaintiffs provided AT&T with certain letters.  AT&T denies the remaining allegations of Paragraph 35 of the Complaint.

**36.    On or after June 30, 2007, PAETEC, through the entities described in paragraphs 4 through 13 of this Complaint, provided and continues to provide the exchange access services to AT&T.  AT&T has failed to pay and continues to fail to pay PAETEC for these access services pursuant to the filed rates in PAETEC'S interstate and intrastate exchange access tariffs.**

RESPONSE TO PARAGRAPH 36:  AT&T admits that it has not paid the full amounts of certain bills it received from Plaintiffs.  AT&T denies the remaining allegations in Paragraph 36 of the Complaint.

37.    **PAETEC reserves the right to amend its claims to include any additional charges that may be owed by AT&T and such attorneys' fees, costs, expenses and interest as may be allowed by laws.**

RESPONSE TO PARAGRAPH 37:    AT&T avers that Paragraph 37 contains no allegations of fact or law, and that no response is required.    To the extent there are such allegations, AT&T denies the allegations in Paragraph 37 of the Complaint.

## COUNT I

### Breach of Tariffs

38.    **The allegations set forth in paragraphs 1 through 37 above are incorporated herein by reference.**

RESPONSE TO PARAGRAPH 38:    AT&T herein reincorporates by reference its responses set forth in Paragraphs 1 through 37.

39.    **PAETEC filed various tariffs with the Federal Communications Commissions and the Public Service Commission of the District of Columbia and other state commissions including, but not limited to, Maryland, Pennsylvania, Delaware, Virginia, New Jersey, Connecticut, Massachusetts, New Hampshire, New York, Rhode Island, Florida, Georgia, North Carolina, South Carolina, Tennessee, Louisiana, and Indiana.**

RESPONSE TO PARAGRAPH 39:    AT&T admits that Plaintiffs have filed certain tariffs with regulatory agencies, but otherwise denies the allegations on Paragraph 39 of the Complaint.

40.    **The tariffs describe the rates and services offered by PAETEC to their customers and contain rules and regulations pursuant to which such telecommunications services are rendered.**

RESPONSE TO PARAGRAPH 40:    AT&T admits that tariffs, as a general matter, contain rates and terms for the services described in the tariffs.    AT&T otherwise denies the allegations in Paragraph 40 of the Complaint.

41.    **By using the exchange access services provided by PAETEC, AT&T undertook and assumed an obligation to make all payments due to PAETEC in accordance with the terms of the tariffs.**

RESPONSE TO PARAGRAPH 41:  AT&T denies the allegations in Paragraph 41 of the Complaint.

**42.    AT&T is in breach of the tariffs because AT&T has failed to pay for services provided it by PAETEC in accordance with the tariffs.**

RESPONSE TO PARAGRAPH 42:  AT&T denies the allegations in Paragraph 42 of the Complaint.

**43.    As a direct and proximate result of AT&T's breach of these tariffs, PAETEC has suffered significant monetary damages exceeding five hundred thousand dollars ($500,000).  In addition, AT&T owes PAETEC late payment fees calculated at 1.5% per month per the applicable agreements and tariffs.**

RESPONSE TO PARAGRAPH 43:  AT&T denies the allegations in Paragraph 43 of the Complaint.

**44.    WHEREFORE, PAETEC respectfully requests that this Court enter a judgment in favor of PAETEC against AT&T for damages, plus an award of attorneys' fees, costs, expenses and prejudgment interest and post-judgment interest, and such additional and further relief as the Court may deem just and proper.**

RESPONSE TO PARAGRAPH 44:  AT&T denies the allegations in Paragraph 41 of the Complaint.

## COUNT II

### Alternative Claim for Quantum Merit

**45.    The allegations set forth in paragraphs 1, through 43 are incorporated herein by reference.**

RESPONSE TO PARAGRAPH 45:  AT&T herein reincorporates by reference its responses set forth in Paragraphs 1 through 45.

**46.    In the alternative, it is averred that PAETEC, at AT&T's request, and with AT&T's knowledge, acquiescence and acceptance, provided to AT&T exchange access services.**

RESPONSE TO PARAGRAPH 46:  AT&T denies the allegations in Paragraph 46 of the Complaint.

**47.     In the course of providing such services, PAETEC necessarily incurred various costs, and charges for labor, for use of its equipment and facilities and for other expenses.**

RESPONSE TO PARAGRAPH 47:  AT&T denies the allegations in Paragraph 47 of the

Complaint.

**48.     AT&T has refused, despite demand, to pay the fair value for the services furnished, although payment is past due.**

RESPONSE TO PARAGRAPH 48:  AT&T denies the allegations in Paragraph 48 of the

Complaint.

**49.     WHEREFORE, PAETEC respectfully requests that this Court enter a judgment in favor of PAETEC against AT&T for damages, plus an award of attorneys' fees, costs, expenses and prejudgment interest and post-judgment interest, and such additional and further relief as the Court may deemed just and proper.**

RESPONSE TO PARAGRAPH 49:  AT&T denies the allegations in Paragraph 49 of the

Complaint.

## COUNT III

### Alternative Claim for Unjust Enrichment

**50.     The allegations set forth in paragraphs 1 through 47 above are incorporated herein by reference.**

RESPONSE TO PARAGRAPH 50:   AT&T herein reincorporates by reference its

responses set forth in Paragraphs 1 through 47.

**51.     AT&T obtained from PAETEC exchange access services.  AT&T received the benefits of those services and failed to make proper payment or restitution to PAETEC for the services and benefits received.**

RESPONSE TO PARAGRAPH 51:  AT&T denies the allegations in Paragraph 51 of the

Complaint.

**52.     AT&T has been unjustly enriched at the expense of PAETEC.**

RESPONSE TO PARAGRAPH 52:  AT&T denies the allegations in Paragraph 52 of the

Complaint.

53.    AT&T's actions constitute an unjust retention of benefit owed to PAETEC, which is contrary to the principles of equity and justice.

RESPONSE TO PARAGRAPH 53:  AT&T denies the allegations in Paragraph 53 of the Complaint.

## DEFENSES

AT&T Corp. asserts the following additional defenses without assuming the burden of proof on any issues that would otherwise rest on the Plaintiffs and reserves its rights to assert additional defenses when and if appropriate.

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

## SECOND DEFENSE

Plaintiffs may not obtain relief under any tariff because Plaintiffs are in violation of such tariffs.

## THIRD DEFENSE

Plaintiffs' claims are barred because they have engaged in violations of the Communications Act including but not limited to 47 U.S.C. §§ 201 and 203.


Wherefore, AT&T requests that the Complaint be dismissed with prejudice, and that the Court enter judgment in its favor and against the Plaintiffs, award AT&T attorneys' fees, costs, and expenses, and grant AT&T such further relief as is just and equitable.

## COUNTERCLAIMS OF AT&T

AT&T Corp., for its counterclaims against Plaintiffs-Counterclaim Defendants, states as follows:

## JURISDICTION AND VENUE

1.    This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331, 1337, and 47 U.S.C. § 207 because AT&T's claims arise under the federal Communications Act, a law of the United States.  This Court has jurisdiction over AT&T's requests for declaratory relief under 28 U.S.C. §§ 2201 and 2202.

2.    To the extent that this Court finds that venue is proper in this district regarding the claims in the Complaint, then venue is proper in this judicial district under 28 U.S.C. § 1391 as to AT&T's counterclaims against Plaintiffs.

## PARTIES

3.    Defendant-Counterclaim Plaintiff AT&T is a New York corporation that provides communications and other services to U.S.-based and foreign-based customers and has its principal place of business in Bedminster, NJ.  AT&T is a wholly-owned subsidiary of AT&T Inc.

4.    Upon information and belief, Plaintiff-Counterclaim Defendant PAETEC Communications, Inc. is a corporation organized under the laws of the state of Delaware with its principal place of business located at One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York and is engaged in the business of providing telecommunications services in, among other places, the District of Columbia.

5.    Upon information and belief, Plaintiff-Counterclaim Defendant PAETEC Communications of Virginia, Inc. is a corporation organized under the laws of the

Commonwealth of Virginia with its principal place of business located at One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York and is engaged in the business of providing telecommunications services in the Commonwealth of Virginia.

6.      For purposes of these counterclaims, AT&T refers to the entities described in paragraphs 4 and 5 as "PaeTec."

7.      Upon information and belief, Plaintiff-Counterclaim Defendant US LEC Communications Inc. d/b/a PAETEC Business Services is a corporation organized under the laws of the state of North Carolina with its principal place of business located at One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York and is engaged in the business of providing telecommunications services in, among other places, the states of New York and Indiana.

8.      Upon information and belief, Plaintiff-Counterclaim Defendant US LEC of Pennsylvania Inc. d/b/a PAETEC Business Services is a corporation organized under the laws of the state of North Carolina with its principal place of business located at One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York and is engaged in the business of providing telecommunications services in the states of New Jersey, Delaware, and Pennsylvania.

9.      Upon information and belief, Plaintiff-Counterclaim Defendant US LEC of Virginia LLC d/b/a PAETEC Business Services is a limited liability company organized under the laws of Delaware with its principal place of business located at One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York and is engaged in the business of providing telecommunications services in the District of Columbia and Virginia.

10.     Upon information and belief, Plaintiff-Counterclaim Defendant US LEC of Maryland LLC d/b/a PAETEC Business Services is a limited liability company organized under

the laws of the North Carolina with its principal place of business located at One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York and is engaged in the business of providing telecommunications services in Maryland.

11.    Upon information and belief, Plaintiff-Counterclaim Defendant US LEC of Alabama LLC d/b/a PAETEC Business Services is a limited liability company organized under the laws of the sate of North Carolina with its principal place of business located at One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York and is engaged in the business of providing telecommunications services in Alabama.

12.    Upon information and belief, Plaintiff-Counterclaim Defendant US LEC of Florida LLC d/b/a PAETEC Business Services is a limited liability company organized under the laws of the state of North Carolina with its principal place of business located at One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York and is engaged in the business of providing telecommunications services in Florida.

13.    Upon information and belief, Plaintiff-Counterclaim Defendant US LEC of Georgia LLC d/b/a PAETEC Business Services is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at on One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York and is engaged in the business of providing telecommunications services in Georgia.

14.    Upon information and belief, Plaintiff-Counterclaim Defendant US LEC of North Carolina Inc. d/b/a PAETEC Business Services is a corporation organized under the laws of the state of Delaware with its principal place of business located at on One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York and is engaged in the business of providing telecommunications services in North Carolina.

15.    Upon information and belief, Plaintiff-Counterclaim Defendant US LEC of South Carolina Inc. d/b/a PAETEC Business Services is a corporation organized under the laws of the state of Delaware with its principal place of business located at on One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York and is engaged in the business of providing telecommunications services in South Carolina.

16.    Upon information and belief, Plaintiff-Counterclaim Defendant US LEC of Tennessee Inc. d/b/a PAETEC Business Services is a corporation organized under the laws of the state of Delaware with its principal place of business located at on One PAETEC Plaza, 600 Willowbrook Office Park, Fairport, New York and is engaged in the business of providing telecommunications services in Tennessee, Mississippi, and Louisiana.

17.    For purposes of these counterclaims, AT&T refers to the entities described in paragraphs 7 to 16 as "the former US LEC entities."  For purposes of these counterclaims, the terms "Plaintiffs" or "Plaintiffs-Counterclaim Defendants" are used to refer to both PaeTec Communications and the former US LEC entities.

## FACTS COMMON TO COUNTERCLAIMS

### The FCC's Rules On CLEC Access Rates.

18.    A long distance carrier like AT&T does not always own the facilities that directly connect a customer's premises to the carrier's long distance network.  In those cases, the long distance carrier, which is also known as an interexchange carrier or "IXC," relies on local exchange carriers ("LECs") to complete long distance calls over the LECs' facilities.  The services provided by LECs in order to complete long distance calls are known as access services. The disputes in this case involve access services.

19.    Years ago, in any particular geographic area, there was only a single LEC, which is now known as an incumbent local exchange carrier ("ILEC").  In 1996, Congress passed

legislation to facilitate entry by competitive local exchange carriers, or "CLECs." The Plaintiffs-Counterclaim Defendants are CLECs, rather than ILECs. AT&T is affiliated with some ILECs, but the claims in this case involve AT&T's long distance services.

20.    Traditionally, LECs offered access services pursuant to tariffs, which are akin to contracts and which contain the terms, conditions, and prices for the access services. Tariffs are generally filed at either the Federal Communications Commission ("FCC") or state public utility commissions. However, as described in more detail below, CLECs are permitted to offer access services pursuant to tariffs or pursuant to ordinary contracts.

21.    Although the rates for access services charged by ILECs are generally closely regulated by the FCC to ensure they are reasonable, the FCC initially did not review or limit the rates for access services provided by CLECs. However, in 2001, the FCC found that, even though CLECs nominally compete against ILECs, CLECs enjoy "a series of bottleneck monopolies" with regard to access services. *See In the Matter of Access Charge Reform, Reform of Access Charges Imposed by Competitive Local Exchange Carriers*, 16 FCC Rcd. 9923, ¶¶ 30. 38-40 (2001) ("*CLEC Access Charge Order*").

22.    In particular, the FCC found that CLECs could "use the tariff system to set access rates that were neither subject to negotiation nor to regulation designed to ensure their reasonableness." *Id.* ¶ 2. The rates for access services that CLECs listed in their tariffs were thus very often quite high and excessive. *Id.* ¶¶ 22, 34.

23.    As a consequence, in 2001, the FCC adopted rules that limit the rates that CLECs like the Plaintiffs can charge pursuant to filed tariffs. *See id.* ¶¶ 35-63; 47 C.F.R. § 61.26. Under these rules, a CLEC is not allowed to file a tariff for access services with a rate that exceeds a specified benchmark. Since June, 2004, the benchmark rate for a CLEC's access services has

been the rate charged by the ILEC that would provide the access services if they were not provided by the CLEC – the FCC called this ILEC the "competing ILEC." *See id.* § 61.26(a)(2).

24.    An ILEC's charges for access services are typically composed of a series of "rate elements" that reflect various components of an access service.  Some rate elements are assessed on a "per minute" basis (*i.e.*, each minute of a call is subject to a specific charge), while other rate elements include "per minute" and "per mile" charges that are based on the distance that a call is carried and the duration of the call.  The total of all these applicable rate elements is the composite rate for access services.

25.    Under the FCC's rules, the CLEC is not required to mirror each of the precise rate elements charged by the competing ILEC.  However, regardless of the names of any particular rate elements used by the CLEC to describe its access services, the composite, per-minute rate charged by the CLEC for access services cannot exceed the composite, per-minute rate charged by the competing ILEC.  *See* 47 C.F.R. 61.26(a)(5) (defining "rate").

26.    As a general matter, a CLEC can be interconnected with an IXC either directly or indirectly.  When indirect connections are used, the network facilities owned or leased by the CLEC are not directly connected to the IXC's network facilities; instead, the CLEC reaches the IXC indirectly by interconnecting with another carrier, usually an ILEC, which is then directly connected to the IXC.  When an IXC connects directly, then facilities are established directly between the IXC's network facilities and the facilities of the CLEC.

**The Plaintiffs' Tariffed Rates For Access Services**

27.    Beginning in 2004 and continuing until today, PaeTec's tariffs for access services have expressly provided that "[n]otwithstanding any other provision of this tariff, the rate for Switched Access Service shall equal the maximum rate permitted under 47 C.F.R. § 61.26," which is the provision of the FCC's rules discussed above that limits CLEC's rates in filed

access services tariffs.  In other words, the tariffs provide that Plaintiffs' rates for access services will not exceed the benchmark rate, which is the composite per-minute rate of the competing ILEC for the same type of service.

28.    Despite this provision and other provisions in the tariffs for access services that provide that Plaintiffs' rates will not exceed those of the relevant competing ILEC, Plaintiffs have over time filed tariff revisions that have increased their rates for access services, in violation of their own tariffs, the FCC's regulations, and the provisions of the Communications Act.

29.    Specifically, PaeTec filed revisions to its access services tariffs in July, 2006, that changed the names of the applicable rate elements and increased the rate for these rate elements, so that the composite rate for access service exceeded the rates of the relevant competing ILEC.

30.    For example, in July 2006, PaeTec filed a tariff revision stating that its switched access services would now include a "rate category" called "Switched Access Service," or "SWAS."  Previously, PaeTec's tariffs had included a similar rate category called "Local Switching."  As a general matter, PaeTec's filed rates for SWAS were higher than its rates for the "Local Switching" rate category.  For instance, for calls that were placed or completed in New York City and certain other parts of New York, PaeTec's rate for SWAS after July 2006 was $0.005447 per minute if an IXC connected indirectly and was $0.003681 if an IXC connected directly to PaeTec.  Just previous to this rate increase, PaeTec's comparable rate for the "Local Switching" rate category was $0.002084.  For most other states, PaeTec made similar changes and rate increases.

31.    Because of these increases in the SWAS rate category, PaeTec's composite, per minute rates for switched access services exceeded the composite per-minute rates charged by

the competing ILEC.  For example, in Virginia, PaeTec has charged AT&T $0.003681 per minute of use, while the competing ILEC rate for the same service was $0.002264.

32.     In early 2007, the former US LEC entities jointed the tariff filings of PaeTec. After that date, the rates for switched access services charged by the former US LEC entities also violated the tariffs, the FCC's regulations, and the provisions of the Communications Act, for the reasons explained above.

## COUNT I

### (Violation of Section 203 of the Communications Act, 47 U.S.C. § 203)

33.     AT&T hereby incorporates its allegations in paragraphs 1 to 32 as if fully set forth herein.

34.     Section 203(c) of the Communications Act, 47 U.S.C. § 203, provides, in relevant part, that "[n]o carrier . . . shall engage or participate in [interstate or foreign wire or radio] communication unless schedules have been filed and published in accordance with the provisions of this chapter and with the regulations made thereunder" and that "no carrier shall (1) charge, demand, collect, or receive a greater or less or different compensation for such communication, or for any service in connection therewith, . . . than the charges specified in the schedule then in effect . . . ." *Id.*

35.     The Plaintiffs-Counterclaim Defendants' "schedules" (*i.e.*, tariffs) set forth the rates for and terms and conditions under which they assess interstate access services.

36.     The Plaintiffs-Counterclaim Defendants' tariffs provide that "[n]otwithstanding any other provision of this tariff, the rate for Switched Access Service shall equal the maximum rate permitted under 47 C.F.R. § 61.26," which is the provision of the FCC's rules that limits CLEC's rates in filed access services tariffs.

37.     The Plaintiffs-Counterclaim Defendants' tariffs also provide that the "rate for Switched Access Service shall be a composite, per-minute rate equivalent to that charged by the competing ILEC for functionally equivalent services. . . ."

38.     Despite these provisions, the rates contained in the Plaintiffs-Counterclaim Defendants' tariffs exceed the maximum rate permitted under the FCC's rules and exceed the composite, per-minute rates charged by the competing ILEC.

39.     The bills that the Plaintiffs-Counterclaim Defendants have provided to AT&T contain rates that exceed the maximum rate permitted under the Plaintiffs-Counterclaim Defendants' tariffs.

40.     Plaintiffs-Counterclaim Defendants have sought to obtain from AT&T charges for access services that are greater than those allowed under their tariffs, in violation of Section 203 and the filed tariff doctrine.

41.     AT&T has been damaged by Plaintiffs-Counterclaim Defendants' violation of their federal access tariffs, and prays for damages in an amount to be determined at trial, interest, attorneys' fees, court costs, declaratory relief, injunctive relief and such other relief as the Court may deem just and reasonable.

**COUNT II**

**(Violation of Section 201(b) of the Communications Act, 47 U.S.C. § 201(b))**

42.     AT&T hereby incorporates its allegations in paragraphs 1 to 41 as if fully set forth herein.

43.     Section 201(b) of the Communications Act provides that "all charges, practices" for and in connection with interstate services "shall be just and reasonable," and "any such charge [or] practice . . . that is unjust and unreasonable is hereby declared to be unlawful."  47 U.S.C. § 201(b).

44.     Pursuant to Section 201(b) and other provisions of the Act, the FCC has promulgated regulations that prevent Plaintiffs-Counterclaim Defendants from filing tariffs for switched access services with rates that exceed the rates charged by the competing ILEC.

45.     Plaintiffs-Counterclaim Defendants have filed tariffs with rates for switched access services that exceed the rates charged by the competing ILEC.

46.     Plaintiffs-Counterclaim Defendants have therefore violated the FCC's regulations, have filed unjust and unreasonable rates, and have committed an unjust and unreasonable practice in violation of the Communications Act.

47.     AT&T has been damaged by Plaintiffs-Counterclaim Defendants' violation of the Act, and prays for damages in an amount to be determined at trial, interest, attorneys' fees, court costs, declaratory relief, injunctive relief and such other relief as the Court may deem just and reasonable.

## PRAYER FOR RELIEF

WHEREFORE, Defendant/Counterclaim Plaintiff AT&T respectfully requests that the Court enter judgment in its favor against Plaintiffs/Counterclaim Defendants, and that it grant AT&T the following relief:

(a)    Money damages to be proven at trial, plus prejudgment interest;

(b)    Restitution;

(c)    All costs and attorney's fees incurred by AT&T;

(d)    Preliminary and permanent injunctive relief enjoining Plaintiffs/Counterclaim Defendants from continuing to engage in the unlawful conduct complained of; and

(e)    Such other relief as the Court deems appropriate.

AT&T hereby demands a jury trial on all issues and claims so triable.

Dated:  July 30, 2008

Respectfully submitted,

/s/ Michael J. Hunseder

David L. Lawson (D.C. Bar #434741)
Michael J. Hunseder (D.C Bar # 447260)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

*Attorneys for Defendant AT&T Corp.*